*In re* ESTATE OF LAWRENCE LAIRD SUTHERLAND, a/k/a Laird Sutherland, Deceased (John Ellis, Petitioner-Appellant, v. Thomas Chuhak, Adm'r with the Will Annexed of the Estate of Lawrence Laird Sutherland, Deceased, Administrator-Appellee).

First District (5th Division)  No. 1—91—0588

Opinion filed May 15, 1992.

Law Offices of Jacob and Lawrence S. Bloom, of Chicago, for appellant.

Richard J. Ciecka, John Laurence Kienlen, Barry Feinberg, and Jeffrey C. Schmidt, all of Chicago, for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Petitioner-appellant John Ellis (Ellis) filed a petition in the probate division of the circuit court of Cook County, seeking leave to file a claim against the Sutherland estate for services rendered. This peti-

tion was denied because the court determined that the claim period had expired. An appeal was taken from this denial pursuant to Supreme Court Rule 304(b)(1) (107 Ill. 2d R. 304).

The sole issue presented for review is whether Ellis, a creditor of the estate whose name and whereabouts were known, received sufficient notice under the due process clause of the fourteenth amendment of the United States Constitution and article I, section 2, of the Illinois Constitution (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) of the proceedings in the Sutherland estate to afford him an opportunity to file his claim prior to the running of the claims limitation period. The trial court found that he had. For the following reasons, we affirm the decision of the trial court.

Ellis had assisted Lawrence Laird Sutherland in the management of certain real estate Sutherland owned and continued to provide services after his death. On January 31, 1988, Sutherland (decedent) died testate. On August 8, 1988, Ellis, a creditor of the estate, appeared through his attorney, Hugh J. Schwartzberg, before the trial court and presented a petition for probate of will and for letters of administration with the will annexed seeking to nominate himself as administrator of the estate. Thomas Chuhak, the public administrator, also appeared through his attorney before the trial court that day pursuant to notice given to him of Ellis' petition. Also appearing was a representative of the State's Attorney's office. The court entered an order granting all parties leave to answer or otherwise plead to the petition, which was not filed but continued to August 16, 1988, for hearing.

On August 16, 1988, the petition seeking to appoint Ellis as the personal representative of the Sutherland estate was filed with the clerk of the probate division of the circuit court of Cook County. Thomas Chuhak, as the public administrator of Cook County, also filed his petition for letters of administration to collect and cross-petition for letters of administration with the will annexed the same day. It is unclear from the record whether copies of these petitions were served upon Ellis or his attorney. However, Ellis and/or his attorney were in court on August 8, when the court set the August 16 date for further hearing. On August 16, 1988, the court entered an order appointing Thomas Chuhak the administrator to collect the estate of Sutherland. The record does not reflect that copies of this order were sent to Ellis or his attorney, nor does it reflect that these actions by the court were opposed by Ellis or the State's Attorney.

Pursuant to the authority granted, the public administrator petitioned the court in September of 1988 to sell certain securities of the

estate. Notice of this petition was sent to Ellis' attorney, Schwartz-berg, and to the State's Attorney. Permission was subsequently granted by the court without opposition.

On February 2, 1989, a copy of Chuhak's amended petition for letters of administration with the will annexed, along with a notice of motion stating that on February 9, 1989, he would present his amended petition to the court, was sent to Schwartzberg. On February 9, 1989, letters of office were issued to Thomas Chuhak as administrator with the will annexed. On February 17, 1989, pursuant to the provisions of the Probate Act of 1975 in effect at that time (Ill. Rev. Stat. 1987, ch. 110½, par. 18—3), the administrator caused publication to be made in which the statutory period for filing claims against the estate was fixed at six months, commencing on February 9, 1989, and ending on August 9, 1989.

In May 1989, Mrs. Bayne Cherami Dean (Dean), decedent's sole heir and legatee, apparently discussed the management of the estate's real estate with Ellis. On May 23, 1989, by letter to Ellis in care of Hugh Schwartzberg, his attorney, she gave Ellis specific instructions regarding the management of the estate's real property. In that letter Dean requested Ellis to prepare a bill for his services from the date of Sutherland's death to current date, to send it to her for approval, and she would submit it to the administrator for payment.

In response to this letter, Ellis sent a series of 17 statements all dated August 3, 1989, to Dean for services rendered to the estate from February 1, 1988, through June 30, 1989. It appears that these documents were transmitted between August 4 and 8 of 1989. Each statement was approved in writing by Dean. There is no evidence in the record that Dean submitted these claims to the administrator as she stated she would in her letter to Ellis.

On December 4, 1990, almost four months after the expiration of the deadline for filing claims against the estate, Ellis, appearing through new attorneys, presented his petition for leave to file his claim against the Sutherland estate. On February 1, 1991, after a hearing at which the administrator and apparently Dean opposed Ellis' request, the court entered an order denying Ellis leave to file the claim as untimely. It is undisputed that the administrator did not notify Ellis, by mail or otherwise, of the statutory deadline for filing claims against the estate. The notice provisions of the Probate Act in effect at the time required only notice by publication to creditors. Ill. Rev. Stat. 1987, ch. 110½, pars. 18—3(a), 18—12.

Ellis challenges the constitutionality of sections 18—3 and 18—12 of the Probate Act in effect at the time his claim arose. Section 18—3

required only notice by publication to creditors of a probate estate and barred all claims not presented to the administrator or the court within six months after issuance of letters of office and the requisite notice by publication. He relies principally on *Tulsa Professional Collection Services, Inc. v. Pope* (1988), 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340. In *Tulsa*, the Supreme Court scrutinized an Oklahoma probate statutory scheme very similar to the one then in effect in Illinois. Under the Oklahoma probate code, creditors' claims against an estate were generally barred unless those claims were presented within two months of publication of notice that probate proceedings had commenced. In Illinois, the claim period is six months. The Supreme Court held in *Tulsa* that notice by publication to certain estate creditors was inadequate for purposes of the due process clause of the fourteenth amendment. It found that notice by publication to known creditors or those readily ascertainable was inadequate because, under the circumstances, it was not reasonably calculated to reach those who could easily be informed by other means at hand, citing *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652. In *Mullane*, the court held that the constitutionally required notice to beneficiaries of certain trust funds whose names and addresses were known was "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657.) The court observed that notice by mail to such persons provides an efficient and inexpensive means of communication upon which prudent men will ordinarily rely in the conduct of their business.

Further, in *City of New York v. New York, New Haven & Hartford R.R. Co.* (1953), 344 U.S. 293, 97 L. Ed. 333, 73 S. Ct. 299, the Supreme Court held that the claim of a creditor of a bankrupt railroad who was known to the bankrupt could not be barred on publication notice even if it had general knowledge that a court reorganization of the railroad was taking place. It said: "even [those] creditors *** have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred." (344 U.S. at 297, 97 L. Ed. at 337, 73 S. Ct. at 301.) Accord *Walker v. City of Hutchinson* (1956), 352 U.S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200 (notice of condemnation proceeding published in a local newspaper was an inadequate means of informing a landowner whose name was known to the city and was on the official record); *Schroeder v. New York City* (1962), 371 U.S. 208, 9 L. Ed. 2d 255, 83 S. Ct. 279 (publication notice to a property owner in a condemnation proceeding was

inadequate where his name and address were readily ascertainable from both deed records and tax rolls).

*Greene v. Lindsey* (1982), 456 U.S. 444, 72 L. Ed. 2d 249, 102 S. Ct. 1074, applied the *Mullane* standard in holding that under the factual circumstances of the case, posting notice on an apartment door did not satisfy minimum standards of due process in a forcible entry and detainer action of informing the tenant of the proceedings. There was evidence presented that children frequently removed these notices from apartment doors.

In the case preceding *Tulsa,* the Supreme Court in *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706, struck down as violative of the due process clause of the fourteenth amendment the notice provisions of an Indiana statute that permitted the interest of a mortgagee of record to be foreclosed in a property tax sale on publication notice. The Court reiterated that the notice required must not rely on chance alone to reach interested parties, but rather notice meeting the standard set forth in *Mullane* was the minimum due process protection required by the fourteenth amendment.

The due process standard enunciated in *Tulsa* was applied in *Rose v. Kaszynski* (1988), 178 Ill. App. 3d 266, 533 N.E.2d 73, upon which Ellis relies. Rose filed a breach of contract action against Ben Kaszynski. During the pendency of the action, Ben Kaszynski died. On April 10, 1984, Mary Kaszynski, decedent's widow (defendant), was appointed executor of decedent's estate. Section 18—3 of the Probate Act provided notice by publication to estate creditors, and section 18—12 barred all claims not filed with the estate representative or the court within six months after the entry of the order directing issuance of letters of office. Ill. Rev. Stat. 1987, ch. 110½, pars. 18—3, 18—12.

On October 4, 1984 (six days prior to the expiration of the claim period), the death of decedent was suggested and spread of record. Defendant was joined as a party to the contract action on February 19, 1985, and was served with summons about one month later. Defendant moved for involuntary dismissal on the ground that because she was not joined as a party in the lawsuit until February 19, 1985, over five months after the expiration of the claim period, plaintiff's claim against her as executor of decedent's estate was untimely. The trial court denied defendant's motion, the jury awarded damages against the estate and defendant appealed.

In his appeal, defendant relied upon the decision of the Illinois Supreme Court in *In re Estate of Worrell* (1982), 92 Ill. 2d 412, 442 N.E.2d 211, which had barred a plaintiff's claim for failure to file his

claim in the probate proceedings within the six-month period under section 18—13 of the Probate Act. The appellate court disagreed, holding that *Tulsa* governed the outcome and that *Worrell* was no longer viable at least under the circumstances presented.

The court in *Rose* observed that, as in *Tulsa*, defendant never gave actual notice to the plaintiff in the contract action. Given the fact that defendant was decedent's widow and the contract action had been pending for almost five years before decedent's death, the court found that plaintiff was a known or reasonably ascertainable creditor of the estate. Thus, notice by mail or other means as certain to ensure actual notice to the plaintiff was required, and under the mandate of *Tulsa*, the decision of the trial court to allow plaintiff's action was proper notwithstanding the Illinois Supreme Court's decision in *Worrell* to the contrary. But see *Farm Credit Bank v. Brown* (1991), 217 Ill. App. 3d 730, 577 N.E.2d 906 (in which the Fifth District Appellate Court declined to apply *Tulsa* retroactively).

In the instant case, creditor Ellis contends that the decision in *Rose* set forth above should be dispositive of this case. Since the decision in *Rose*, the legislature has amended the Illinois Probate Act to conform to the principle enunciated in *Tulsa*. It now provides that the estate representative "mail or deliver to each creditor of the decedent whose name and address are known to or are reasonably ascertainable by the representative and whose claim has not been allowed or disallowed *** a notice stating the death of the decedent, the name and address of the representative and of his attorney of record, that claims may be filed on or before the date stated in the notice." Ill. Rev. Stat. 1989, ch. 110½, par. 18—3.

However, an adequate consideration of the due process issue presented by the facts of the case before us is not complete without an analysis of *In re Estate of Malone* (1990), 198 Ill. App. 3d 960, 556 N.E.2d 678, relied upon by the administrator. *Malone* was also decided after the Supreme Court's decision in *Tulsa* and before the 1989 amendment to the Illinois Probate Act set forth above. It concerned a plaintiff (Pavela) who had filed a stockholder's derivative suit against Martin Malone, a director and major shareholder of Creative Office Interiors, Inc. (Creative), on March 8, 1985. Malone died testate on December 21, 1986, during the pendency of the derivative action. His widow, Florence (Mrs. Malone), was named executor of the estate. Pursuant to section 18—3 of the Probate Act, notice of Malone's death was published in the Chicago Daily Law Bulletin. The notice indicated that letters of office had been issued on January 12, 1987, and

that claims against the estate must be filed within six months of that date.

Subsequently, on March 12, 1987, Creative's annual shareholders' meeting was held. Present were Pavela, Mrs. Malone, their respective attorneys, and James Flynn, the secretary of Creative. At the meeting, Flynn confirmed that Mrs. Malone had been named independent executor of Malone's estate, that Malone's 1,500 shares of Creative stock had been transferred to Mrs. Malone pursuant to his will and that the shares would be probated with the estate.

On August 26, 1987, Pavela filed his motion to suggest the death of Malone and to substitute his widow as a defendant in the shareholder's derivative suit. On November 4, 1987, Pavela's motion was denied on the ground that the six-month statutory claim period under the Probate Act had expired.

Pavela filed a motion for reconsideration predicated on *Tulsa*, asserting that because he was a known claimant of Malone's estate who had been given only publication notice, he had been denied due process and his motion to substitute Mrs. Malone as executor should have been granted.

Mrs. Malone, the executor, moved for summary judgment, which was granted. The trial court declined to rule on the issue of the constitutionality of section 18—3 of the Probate Act then in effect, based upon the fact that plaintiff and his attorney had had actual notice of Malone's death within the six-month claim period and, therefore, lacked standing to challenge the constitutionality of sections 18—3 and 18—12 of the Act. The court observed that in determining whether notice given in a particular circumstance is sufficient to ensure actual notice, the United States Supreme Court has looked at four factors: (1) whether the form of notice relies on mere chance to reach the attention of the other party (*Mullane*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652); (2) whether the form of notice is designed to attract the attention of the other party (*Mennonite*, 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706); (3) whether the actual means of providing notice is reliable (*Greene*, 456 U.S. 444, 72 L. Ed. 2d 249, 102 S. Ct. 1074); and (4) whether the means of notice was reasonable when compared to other alternatives (*Greene*, 456 U.S. 444, 72 L. Ed. 2d 249, 102 S. Ct. 1074).

The court observed that three months before the actual expiration of the statutory claim period, Pavela and his attorney attended the shareholders' meeting and learned from the corporate secretary that Mrs. Malone had been named executor of Malone's estate and that Malone's stock had been transferred to her pursuant to decedent's

will and would be probated with the estate. Therefore, the court held that Pavela had sufficient actual notice at the time of this meeting to timely file his motions in the probate proceeding. The court said: "First, the information conveyed at the meeting did not rely on chance to bring notice to [Pavela] of Malone's death, of [Mrs. Malone's] appointment as executor, and of the transfer of Malone's shares. The meeting was an annual shareholders' meeting, which [Pavela], as a shareholder, attended. Secondly, the Secretary's report was specifically prepared to be read to the shareholders and was intended to attract their attention. Third, the report was reliable and, fourth, it was a reasonable means by which to convey the information relevant to the shareholders. Although notice by mail could also have conveyed this information to [Pavela], the Supreme Court has not held that mail notice is necessary in every situation where notice is required. The Court merely held that the form of the notice must be certain to ensure actual notice." *Malone*, 198 Ill. App. 3d 960, 963-64, 556 N.E.2d 678, 681, citing *Mullane*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652.

Both Pavela and his attorney were presumed to know they must substitute a party for the deceased in the pending claim according to applicable law. Checking the probate file or inquiring of Mrs. Malone as to when her letters of office issued would have apprised Pavela and his attorney of when the statutory claim period had begun to run. Instead, Pavela did nothing for more than five months. Therefore, the court in *Malone* concluded that his failure to timely file his motions was not due to a deficiency of actual notice, but rather to a failure to act timely on the notice received.

The facts of the case before us are even stronger than those in *Malone* and we therefore deem the rationale of that case to be dispositive.

Ellis was not just a creditor of the Sutherland estate. In fact, it was Ellis who brought to the attention of the probate court and the public administrator the death of Sutherland. He was the one who initially instituted court proceedings on August 8, 1988, by filing a petition for probate of will and for letters of administration with the will annexed, seeking to have himself appointed personal representative of the estate. Attorney Schwartzberg represented him at that time and he has been represented by an attorney throughout the probate proceedings, including this appeal. He and Schwartzberg were present in court on that date when the matter was continued to August 16, 1988.

On August 16, 1988, Ellis filed his petition with the court and Thomas Chuhak, the public administrator, filed his petition for letters of administration to collect and cross-petition for letters of administration with will annexed. On that day, Chuhak was appointed administrator to collect the estate of Lawrence Laird Sutherland. The record does not reflect that this action by the court was opposed by Ellis.

On February 2, 1989, a copy of Chuhak's amended petition for letters of administration with the will annexed, along with a notice of motion stating that on February 9, 1989, he would present his amended petition to the court, was sent to Schwartzberg, attorney for Ellis. On February 9, 1989, the court granted Chuhak's petition. There is also no indication in the record that this action was opposed by Ellis.

Furthermore, in Ellis' dealings with Dean, the sole heir of the estate regarding his bill for services and the manner of payment, her correspondence was directed to him c/o Schwartzberg, Barnett and Cohen, Suite 2400, 55 West Monroe Street, Chicago, Illinois, 60603. The 17 statements sent to Dean by Ellis and approved by her listed the same address as that of his attorneys. Although we observe parenthetically that the actions of Dean, the sole heir and legatee, raise an interesting question as to whether they could reasonably have led Ellis to conclude his bills were fair and would be paid, this issue is not before us. There is, however, no evidence in the record that the public administrator knew or approved of Dean's dealings with Ellis regarding his bill for services in connection with real property belonging to the estate.

Apparently, it is Ellis' position that because the administrator of the estate did not mail notice to him stating the death of the decedent, the name and address of the representative and his attorney of record, the claim date and its expiration as now required by the Probate Act (Ill. Rev. Stat. 1989, ch. 110½, par. 18—3), the due process requirements of *Tulsa* have not been met. However, in *Tulsa, Mullane,* and all of the other Supreme Court cases discussed above, the creditor or other person with a protectable property interest was not a party to the legal proceedings and had never received notice of the pendency of the proceedings apprising that person that his rights might be affected and affording him an opportunity to appear and be heard.

■ In contrast, in the case before us, Ellis initiated the probate proceedings and his attorney was sent timely notice by mail by the public administrator, Chuhak, of his intent to seek admission of the

will to probate and appointment as administrator with the will annexed on February 9, 1989. Since he did not oppose this action, we are entitled to presume that he knew it was likely that the court would grant the relief requested. Since his attorney initially requested similar relief on Ellis' behalf at the initial stages of the probate proceedings, his attorney is presumed to know that the issuance of letters of office would trigger the running of the six-month claim period. *Tulsa* does not require that in addition notice to Ellis must be mailed to him specifically advising of the commencement and expiration of the claim period. *Tulsa* only requires that the form of notice must be certain to ensure actual notice. The actions of Chuhak in timely apprising Ellis through his attorney of the date and purpose of the proceeding which occurred on February 9, 1989, certainly met the due process requirements of *Tulsa* under the circumstances of this case, and the public administrator was not further required to take the steps mandated by section 18—3 of the Probate Act, now in effect, but which was not in effect at the time this dispute arose.

■ We determine that Ellis received actual notice apprising him of the pendency of a probate proceeding which might affect his rights as a creditor in time for him to take appropriate steps to protect them. Even if the publication notice provisions of section 18—3 of the Probate Act were constitutionally deficient as to a creditor without notice of the probate proceeding, Ellis' receipt of actual notice "deprives him of standing to raise the claim ***. *** [He] has clearly been accorded due process in the application of the statute as to him personally." *Wiren v. Eide* (9th Cir. 1976), 542 F.2d 757, 762.

Ellis, however, made no effort to file his claim until 10 months after letters of office had issued to the public administrator and four months after the claim period had expired. As the appellate court observed in *Malone*, "petitioner's failure to timely file *** is not the result of insufficiency of actual notice; it is the result of failure to timely act on the notice received." *Malone*, 198 Ill. App. 3d at 964, 556 N.E.2d at 681.

For the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and GORDON, JJ., concur.